UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


UNITED STATES OF AMERICA                         MOVANT/DEFENDANT


v.                                               CRIM. ACTION NO. 3:13-CR-158-GNS
                                                 CIV.  ACTION NO. 3:16-cv-00337-GNS


RAHAEL FISHER                                    DEFENDANT


**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**


Rahael Fisher is a federal prisoner.  On December 4, 2014, Fisher entered a plea of

guilty[1] pursuant to a Rule 11(c)(1)(C) plea agreement[2] to the charge of being a convicted felon in

possession of a firearm in violation of 18 USC 922(g)(1), 924(a)(2) and 924(e)(1).[3]  The

indictment identified three prior state felony convictions in Jefferson County, Kentucky, that

included:   (1) a July 16, 2012 conviction for second-degree burglary and receiving stolen

property in case number 11-CR-000997; (2) a July 16, 2012 conviction on one count of

complicity to trafficking in a controlled substance (Schedule II-cocaine) in case number 11-CR-

001104-001; and (3) a July 16, 2012 conviction of one count of second-degree burglary in case

number 12-CR-001350.

---

[1] (DN 44, Order on a Plea of Guilty).
[2] (DN 43, Plea Agreement).
[3] (DN 1, Indictment, Count 1). The facts leading to Fisher's arrest and indictment are set forth in detail in the prior
report and recommendation of the Magistrate Judge that recommended denial of Fisher's motion to suppress.
(DN 41, Findings of Fact, Conclusions of Law and Recommendation)

Under the terms of paragraph 11 the parties' plea agreement, Fisher agreed that his Applicable Offense Level would be determined under United States Sentencing Guideline (U.S.S.G.) § 2K2.1(a)(2) at a base offense level of 24 with a 4 level increase under U.S.S.G. § 2K2.1(b)(6)(B) for use of the subject firearm, a Ceska Zbrojovka .9mm pistol, which he agreed would be forfeited.[4]  This Adjusted Offense Level of 28 was then reduced by agreement by 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a) & (b) for a Total Offense Level of 25.[5]  This Total Offense Level, when combined with Fisher's criminal history category resulted in a guideline sentencing range of 110 to 137 months.[6]  Fisher then agreed in paragraph 12 of the plea agreement to waive his right to a direct appeal of his conviction under 18 U.S.C. § 3742, as well as his right to collaterally attack his conviction or sentence under 28 U.S.C. § 2255.[7]

On March 30, 2015 the District Court entered a judgment that imposed a total sentence of 96 months of imprisonment to be served concurrently with the previously mentioned state convictions followed by three years of supervised release.[8]  More than a year later, on June 2, 2016, Fisher filed his current motion to vacate, correct or set aside pursuant to 28 U.S.C. 2255.[9] The motion to vacate raises a single ground for relief.  Fisher argues, based on *Johnson v. United States,* 135 S.Ct. 2551, 2556-7 (2015), that his sentence violates Due Process because U.S.S.G. § 2K2.1(a)(4) incorporates the "crime of violence" standard of U.S.S.G. § 4B1.2(a), which is

---

[4]  (DN 43, Plea Agreement, p. 6, ¶ 11).
[5]  (Id.)
[6]  (DN 48 final Presentencing Report)
[7]  (DN 43, Plea Agreement, p. 7, ¶ 12).
[8]  (DN 52, Judgment, p. 3).
[9]  (DN 58, Motion to Vacate).

identical to the residual clause portion of 18  U.S.C. § 924(e)(2)(B)(ii) that *Johnson* held to be void for vagueness.[10]

The United States in its response argues, first, that *Johnson* does not apply because Fisher's sentencing guideline calculation did not rely upon any "residual clause" language involving "conduct that presents a serious potential risk of physical injury to another" such as that struck down by *Johnson.*  Rather, the portion of U.S.S.G. § 4B1.2(A)(2) relied on by the Court was the enumerated offense of "burglary of a dwelling" which *Johnson* specifically noted was not subject to its holding regarding the residual clause of § 924(e)(2)(B)(ii).  Second, the government insists that Fisher's motion is time-barred under 28 USC 2255(f)(1) since he cannot rely upon *Johnson* and 2255(f)(3) as the basis for a newly-created, substantive right to be applied retroactively on collateral review by *Welch v. United States,* ___US___, 136 S.Ct. 1257, 1268 (April 18, 2016).

Third, even if the Court were to hold that *Johnson* does apply so as to prevent Fisher's two prior Kentucky burglary convictions from being considered, the 96 month sentence imposed would still fall within the new, lower guideline range of 77 to 96 months, based on the reduced Total Offense Level of 21 combined with Fisher's criminal history category VI.  Finally, all of the above notwithstanding, the United States observes in passing that Fisher waived his right to bring any of his present arguments related to the constitutionality of his sentencing, given the language of paragraph 12 of his plea agreement.

Fisher in reply raises a new argument based on the separate US Supreme Court decision recently announced in *Mathis v. United States*, __ U.S. __ , 136 S.Ct. 2243, __ L.Ed.2d __ (2016), which holds that "burglary" as a predicate violent felony under the Armed Career Criminal Act (ACCA) means the generic offense of an unlawful or unprivileged entry into a

---

[10]  (DN 58, Motion to Vacate, memo p. 3-4).

building or other structure with intent to commit a crime so that indivisible burglary statutes that do not fall within this generic offense may not be the basis of an ACCA enhancement under 924(e)(2)(B)(ii).  Fisher reasons that second-degree burglary under Kentucky's Penal Code, KRS 511.030, is not such a generic form of burglary when one considers the elements of the crime of conviction under the categorical approach in relation to the elements of the generic offense of burglary set out by the ACCA.  Because second-degree burglary as defined under Kentucky law includes the unlawful entry into mobile structures, i.e., vehicles, with intent to commit a crime, Fisher concludes that Kentucky's second-degree burglary statute sweeps more broadly than the generic burglary offense referred to in § 924(e)(2)(B)(ii) and therefore cannot lawfully be the basis of a sentencing guidelines base offense level enhancement.

The United States in its surreply[11] argues that Fisher should not be permitted to raise *Mathis* as grounds for post-conviction relief, given his explicit waiver of the right to pursue such § 2255 relief by the terms of his plea agreement.  Waiver aside, the government insists that *Mathis* does not create a new rule applicable on collateral review so as to trigger the statute of limitation found in § 2255(f)(3), which runs from the date on which the new rule is made retroactive on collateral review, as opposed to the more traditional one-year from the date on which the judgment becomes final under § 2255(f)(1).  Because Fisher's current motion to vacate was filed on June 2, 2016, beyond the one-year time limit after the judgment of March 30, 2015 became final 14 days thereafter on April 13, 2015, the United States concludes that the federal courts are now barred from reaching the merits of the *Mathis* argument.

Next, the government argues that because Fisher was not sentenced under the Armed Career Criminal Act, 18 USC 924(e)(1), such as the defendant in *Taylor vs. United States*, 495 US 575, 599 (1990), the holdings of *Mathis* and *Taylor* do not now control, particularly given

---

[11] (DN 67, Surreply).

4

that the express language of § 2K2.1(a)(2) refers directly to the "burglary of a dwelling," language that is not addressed in either *Mathis* or *Taylor*. Finally, the government observes that even if *Mathis* were held to apply, Fisher's ultimate 96 month sentence was an agreed term under the parties' plea agreement that would still be within the applicable guideline range even if his two prior state convictions for second-degree burglary were not taken into consideration in the calculation of his Total Offense Level under the sentencing guidelines.

## CONCLUSIONS OF LAW

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set forth one or more of three possible grounds for relief. *See United States v. Doyle*, 631 F.3d 815, 817-18 (6th Cir. 2011). The motion may allege an error of constitutional magnitude, allege that the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of fact or law occurred that rendered the entire criminal proceedings invalid. Id. (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). *See also, United States v. Addonizio*, 442 U.S. 178, 185-86 (1979).

Here Fisher claims that the District Court relied on an unconstitutionally vague, residual clause provision to define "crime of violence" under U.S.S.G. § 4B1.2(a)(2), a definition that is incorporated into 2K2.1(a)(4). [12] As a result, his 96 month enhanced sentence is contrary to the holding of *Johnson*. Fisher argues that *Johnson* must be applied retroactively to the sentencing guideline language at issue to grant him relief, given that § 4B1.2(a)(2) is materially similar to the same residual clause language of 18 U.S.C. §924(e)(2)(B)(ii) it struck down. Additionally,

---

[12] Both 2K2.1(a)(2), which provides for a 24 Base Offense Level, and 2K2.1(a)(4), which creates a 20 Base Offense Level, incorporate the "crime of violence" language defined by 4B1.2(a)(2), so that constitutional analysis after *Johnson* is not altered under either of these two guideline subsections both of which have been cited by the parties at various points in their motion papers.

Fisher claims in his reply that the *Mathis* decision applies to his case so as to render the two

Kentucky second-degree burglary convictions relied to enhance his sentence inapplicable

*Plea Agreement Waiver Provisions*

      We turn first to the final argument of the United States that Fisher has waived his *Mathis*

and *Johnson* void for vagueness arguments based on paragraph 12 of his Rule 11(c)(1)(C) plea

agreement.  Paragraph 12 does contain the following standard waiver language:

> Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742
> affords a defendant the right to appeal the sentence imposed.  Unless based on
> claims of ineffective assistance of counsel or prosecutorial misconduct, the
> Defendant knowingly and voluntarily waives the right (a) to directly appeal his
> conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18
> U.S.C. § 3742 and (b) to contest or collaterally attack his conviction and the
> resulting sentence under  28 U.S.C. § 2255 or otherwise.

(DN 43, Plea Agreement p. 5, ¶ 12).

      Such language under other circumstances repeatedly has been held sufficient for a

defendant to make a voluntary, intelligent and knowing waiver of his constitutional rights. The

law is clear that a criminal defendant may waive any right, statutory or constitutional, in a plea

agreement as long as the waiver is voluntary and knowing.  *United States v. Coker*, 514 F.3d

562, 573 (6th Cir. 2008)("A defendant may waive any right, including a constitutional right, in a

plea agreement so long as the waiver is knowing and voluntary.") (citing *United States v.

Calderon*, 388 F.3d 197, 199 (6th Cir. 2004)).  *See gen., United States v. Mezzanatto*, 513 U.S.

196, 201 (1995) ("A criminal defendant may knowingly and voluntarily waiver many of the most

fundamental protections afforded by the Constitution."); *Peretz v. United States*, 501 U.S. 923,

936 (1991) ("The most basic rights of criminal defendants are ... subject to waiver.").

      In *Palmero v. United States*, 101 F.3d 72 (6th Cir. 1996) (available on Westlaw at 1996

WL 678222), the Sixth Circuit confirmed for the first time that a defendant may waive the right

to seek post-conviction § 2255 relief in a plea agreement so long as such waiver is knowing and voluntary.  Three years later in *Watson v. United States*, 165 F.3d 486, 488-89 (6th Cir. 1999) the Sixth Circuit affirmed this view in a published decision.  *Id*. ("[W]e hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief.").

As the Sixth Circuit explained two years later in *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001), "[w]hen a defendant knowingly, intelligently and voluntarily waives the right to collaterally attack a sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. §2255."  *See, In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007), ("[W]e have held that a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." ) (citing *Watson*, 165 F.3d at 489 (6th Cir. 1999)).  *See also United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (enforcing a federal prisoner's waiver of his right to appeal made in the plea agreement).

The problem for the government, however, comes in the form of two more recent decisions *United States v. McBride*, No 15-3759, 2016 WL 3209496 ( 6ᵗʰ Cir. June 10, 2016), and *United States vs. Wall*, No. 12-CR-20180, 2016 WL 4801272 ( E. D. Mich. Sept.  14, 2016).  Taken together *McBride* and *Wall,* for the time being, put an end to any possibility of success on this argument as it relates *Johnson*.  In *McBride*, the defendant filed a motion to vacate his 216 month sentence based on *Johnson* following his earlier guilty plea to six counts of bank robbery.  The defendant in *McBride* had entered into a plea agreement that expressly included the understanding that he would be sentenced as a "career offender" under U.S.S.G. 4B1.1(a) based on his two prior convictions for bank robbery in violation of 18 U.S.C. § 2113(a).  The plea

agreement, however, did not contain the type of broad, standard waiver of appeal and collateral

attack provisions such as those found in paragraph 12 of Fisher's plea agreement.

Faced with these circumstances, the Sixth Circuit nevertheless held that Defendant

McBride had at most waived only his pre-*Johnson* arguments that the sentencing enhancement

did not apply due to the explicit understanding set out in his plea agreement. *McBride,* 2016 WL

3209496 at *1.  To quote from the *McBride* decision:

> McBride waived this argument, except insofar as it could not have been
> made before *Johnson*. A defendant waives the argument that a sentencing
> enhancement does not apply by "explicitly agreeing" that it does, such as through
> "plain, positive concurrence." *United States v. Knox*, 593 Fed.Appx. 536, 536,
> 537 (6th Cir. 2015); *see also United States v. Mabee*, 765 F.3d 666, 671 (6th Cir.
> 2014); cf. *United States v. Priddy*, 808 F.3d 676, 681 (6th Cir. 2015). Statements
> in the plea agreement (that he signed) and the sentencing memorandum (that
> counsel submitted on his behalf) demonstrate that McBride agreed with a career-
> offender designation. In addition, counsel reiterated that position at the sentencing
> hearing. However, a defendant can abandon only "known right[s]." *United States
> v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (emphasis
> added). McBride could not have intentionally relinquished a claim based on
> *Johnson*, which was decided after his sentencing. *See United States v. Stines*, 313
> F.3d 912, 917–18 (6th Cir. 2002); *United States v. Rogers*, 118 F.3d 466, 471 (6th
> Cir. 1997). Although McBride otherwise waived the right to appeal his career-
> offender status, to the extent that his claim relies on *Johnson*, we review for plain
> error. *Priddy*, 808 F.3d at 682.

*Id*.  Likewise, Fisher has waived any pre-*Johnson* arguments related to the 24 point Base

Offense Level determined by way of U.S.S.G. § 2K2.1(a)(2).  He cannot, however, be held to

have made a knowing waiver of a substantive right that did not exist at the time of his plea

agreement, a newly-recognized constitutional right arising under *Johnson* that the US Supreme

Court recently made retroactive on collateral review in *Welch v. United States,* ___US___, 136

S.Ct. 1257, 1268 (April 18, 2016). Therefor it would appear that neither the language of

paragraph 11 nor that of paragraph 12 of the plea agreement automatically precludes

consideration of the *Johnson* argument.

This conclusion, and *McBride,* according to the recent *Wall* decision, withstand further consideration even when the plea agreement contains a broadly-worded waiver of the right to appeal and to pursue collateral attack except in cases of ineffective assistance of counsel or prosecutorial misconduct.  In *Wall*, like *McBride,* the defendant filed a motion to vacate his 57-month sentence based on *Johnson* where the base offense level was increased 20-points under USSG § 2K2.1(a)(4)(A) when a "defendant commits any part of the instant offense [possession of a firearm in violation of 18 USC 922(g)(1)] subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.." U.S.S.G. § 2K2.1(a)(4)(A).  The defendant in *Wall* had a prior felony conviction for 4th Degree Fleeing and Eluding in violation of Mich. Comp. Laws §§ 750.479a(1), (2), which was deemed to be a "crime of violence" under USSG 4B1.2(a).

Defendant Wall argued that after *Johnson* the identical "residual clause" language of USSG 4B1.2(a) was void for vagueness and could no longer be constitutionally applied to support the 20-point enhancement of his base offense level under USSG § 2K2.1(a)(4)(A).  The United States did not attempt to substantively challenge this argument, but instead argued that the plea agreement's standard waiver of the right to direct appeal and collateral review, along with the alleged non-retroactivity of *Johnson* to the federal sentencing guidelines on collateral review, barred any relief for Defendant Wall.  The district court for the Eastern District of Michigan rejected both of these notions, explaining that:

> The Government first asserts that Defendant's collateral attack waiver bars the instant motion. See Gov't Resp. at 3. In his Plea Agreement, Defendant acknowledged that he "knowingly and voluntarily waive[d] that right [to collaterally attack his sentence] and agree[d] not to contest his conviction or sentence in any post-conviction proceeding, including — but not limited to — any proceeding under 28 U.S.C. § 2255." Plea Agreement at 8.

The Sixth Circuit recently permitted a habeas petitioner's *Johnson* claim to go forward, rejecting the view that the petitioner could be deemed to have waived such a claim in his pre-*Johnson* plea agreement. *See United States v. McBride*, 826 F.3d 293 (6th Cir. 2016). The plea agreement in *McBride* did not contain a blanket waiver of the defendant's right to collaterally attack his sentence; instead, the plea agreement memorialized an "understand[ing]" that the defendant would be sentenced as a career offender because "he ha[d] at least two prior crimes of violence convictions." *Id.* at 294. Nevertheless, the Sixth Circuit held that "a defendant can abandon only 'known rights,' " *id.* at 295 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (emphasis in original), and that the defendant "could not have intentionally relinquished a claim based on *Johnson*, which was decided after his sentencing," *id.* (citing *United States v. Stines*, 313 F.3d 912, 917-918 (6th Cir. 2002) ("It would have been impossible for the defendants to have intentionally relinquished or abandoned their *Apprendi* based claims considering *Apprendi* was decided after they were sentenced."); *United States v. Rogers*, 118 F.3d 466, 471 (6th Cir. 1997) ("[Defendant] could not have knowingly waived a constitutional right that evolved after he filed his appellate brief because raising the issue would have been futile in light of then-applicable precedent.")).

The Government argues that *McBride* should be distinguished from the instant case because "there is a world of difference between what was essentially an implied waiver by agreeing to guideline calculations [i.e., *McBride*] versus an affirmative waiver of one's statutory right to collaterally challenge a conviction." Gov't Resp. at 7 (emphasis added). But the Government does not explain what this "world of difference" might be; nor does it offer any authorities drawing the distinction that the Government invites the Court to make. There does not appear to be anything about a broad waiver of one's statutory right to collaterally challenge a conviction that is somehow more worthy of enforcement than a defendant's waiver of the right to collaterally attack a "career offender" designation. This is especially true in the context of both *McBride* and the instant case, given that exactly the same underlying right is being invoked: the right to due process as protected by the void-for-vagueness doctrine.

*See, Wall*, 2016 WL 4801272, at *2.[13]

---

[13]      The government in *Wall*, however, did cite three U.S. Supreme Court decisions, *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759 (1970); and *Parker v. North Carolina*, 397 U.S. 790 (1970), which the Court observed all held guilty pleas to be knowing, voluntary and intelligent despite subsequent changes in constitutional law that would have altered the affected defendants' willingness to plead guilty if those rights had been recognized at the time of the pleas. *Brady*, 397 U.S. at 757 ("a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."). The Court in *Wall* noted that the *McBride* decision made no mention of the trilogy, much less effort to distinguish it. Nevertheless it held itself bound to the Sixth Circuit precedent announced in *McBride*.

       We are no less bound, and in the absence of any mention of *McBride* or *Wall* by the United States, are not in a position to take up the analysis of *Brady, McMann* and *Parker* or their impact on the reasoning of McBride. The

As for the second matter, the retroactive application of *Johnson* to the sentencing guidelines, the court in *Wall* acknowledged that "*Johnson* did not purport to apply beyond the terms of the ACCA" and that "the Supreme Court will definitively settle the issue whether *Johnson*'s rule applies to the Guidelines, and whether it does so retroactively, in *Beckles*." *Wall*, 2016 WL 4801272, at *4. Nevertheless, the court continued to hold that:

> But the law in our circuit is, for the time being, settled. In *United States v. Pawlak,* 822 F.3d 902, 903 (6th Cir. 2016), the Sixth Circuit "join [ed] the majority of [its] sister circuits" in holding that *Johnson*'s void-for-vagueness rationale applied to the Guidelines. "The principal legal argument against applying *Johnson* to the Guidelines is not that their meanings are distinguishable but that the Guidelines are advisory, as opposed to 'statutes fixing sentences.' " Id. at 905 (quoting *Johnson*, 135 S. Ct. at 2557). Notwithstanding the Guidelines' advisory status, *Pawlak* explained that, pursuant to Supreme Court precedent, the Guidelines are sufficiently enmeshed in sentencing practice as to be subject to vagueness challenges. *See generally id.* (discussing *Peugh v. United States*, 133 S. Ct. 2072 (2013)).

> This brings us to the retroactivity question, which the Sixth Circuit recently addressed. *See In re Patrick*, ___ F.3d ____, No. 16-5353, 2016 WL 4254929, at *3 (6th Cir. Aug. 12, 2016). *In re Patrick* decided whether that defendant, in requesting to file a successive habeas petition, had made out a prima facie case that *Johnson* applied retroactively to the Guidelines. *See generally id.* In holding that the defendant "easily satisf[ied]" the prima facie standard, *In re Patrick* fully analyzed the legal landscape and concluded in unequivocal terms that "[t]he

---

Court does note, however, that to the extent that a plea agreement is construed as a form of private contract, *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)( "Plea agreements are contractual in nature. In interpreting and enforcing them, we are to use traditional principles of contract law."), the enforceable waiver of the right to bring future causes of action that may be presently unknown is hardly a unique feature of a private contract. *See gen.*, *Karst-Robbins Coal Co., Inc v Arch of Kentucky, Inc*., 964 S. W.2d 419, 425-26 (Ky. App. 1997)(enforcing a waiver of all rights to recover damages for future liability in the context of a surface mining contract). 29 <u>Williston on Contracts</u> § 73:10 (4th ed.)(" [A] valid release may encompass unknown claims and damages that develop in the future."). Indeed, paragraph 13 of the present parties' own plea agreement contains just such a waiver provision stating that:

> 13.    Defendant agrees not to pursue or initiate any civil claims or suits against the United States of America, its agencies or employees, **whether or not presently known to defendant**, arising out of the investigation or prosecution of the offenses covered by this Agreement.

(DN 43, Plea Agreement p. 7, ¶ 13)(emphasis added). These considerations would seem to weigh against the result of *McBride* particularly when one realizes that what is being waived is not so much any particular constitutional right, present or future, but rather the right to rely on 28 U.S.C. § 2255 as a statutory vehicle by which to assert such rights irrespective of their present existence. Such a waiver could hardly be characterized as being "unknowing." Indeed, if finality is to have any meaning it can be argued to be a necessary feature of a well-drafted plea agreement. Nevertheless *McBride* carries the day until the Sixth Circuit says otherwise.

> Supreme Court's rationale in *Welch* for finding *Johnson* retroactive applies
> equally to the Guidelines." *In re Patrick*, 2016 WL 4254929, at *4, *3. This Court
> follows *In re Patrick* and adheres to the Sixth Circuit's instruction that *Johnson*
> applies retroactively to the Guidelines' residual clause and may be invoked on
> collateral review.

*Wall,* 2016 WL 4801272, at *4.

We adhere to both *Pawlak* and *In re Patrick*, as well. *Johnson*'s void for vagueness analysis applies to the sentencing guidelines retroactively and may properly be invoked on collateral review in the present case, notwithstanding Fisher's plea agreement waiver. This conclusion, however, only means that we consider the *Johnson* arguments of Fisher on their merits as they relate to the critical "crime of violence" language of U.S.S.G. § 2K2.1(a)(2) along with § 4B1.2(a) the Application Notes contained in the Commentary thereto. Neither *McBride* nor *Walls*, however, affords Fisher any relief with respect to his *Mathis* arguments, which are both waived and time barred.

*Mathis* does not involve a new rule made retroactive on collateral review, or even a "new rule" at all. Rather, *Mathis* is merely an extension of well-established US Supreme Court precedent such as that announced in *Descamps v. United States*, ___ U.S.____, 133 S. Ct. 2276, 2281 (2013) and its long line of judicial predecessors. This conclusion is reflected in a growing number of recent federal court decisions to take up the question. Our own sister district court for the Eastern District of Michigan recently so held in *Crawford v United States*, No. 10-20269, 2016 WL 5402967 at * 2-3 (E.D. Ky. Sept. 28, 2016), a case which involved a 2255 motion to vacate that was otherwise untimely filed, but for the possibility that the 1-year time limit of 2255(f)(3) would apply from the date on which the *Mathis* decision was rendered, assuming that the decision announced a new rule of law made retroactive on collateral review.

In *Crawford*, the defendant argued based on *Mathis* that his prior state drug offenses, used to classify him as a career offender, could not serve as predicate offenses because Michigan's drug delivery statute defines one crime while setting forth several different ways to commit the offense, thereby rendering the Michigan drug statute ineligible as a predicate offense under the Armed Career Criminal Act. *Id*. at *2. The *Crawford* district court rejected this argument for two reasons, the first of which was that it was barred by the 1-year statute of limitations of 2255(f)(1). In the words of the court:

> Petitioner presumes, without offering any substantive analysis, that the *Mathis* decision announced a new rule made retroactive upon collateral review. However, in *Mathis*, the Supreme Court explicitly stated that:
>
>> For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements. Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct–his particular means of committing the crime–falls within the generic definition.
>
> *Mathis*, 136 S.Ct. at 2257 (emphasis added); *see also Id*. at 2251 ("Under our precedents, that undisputed disparity resolves this case. We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense.")
>
> *3 Rather than announce a new rule, the Supreme Court in *Mathis* "reiterated its prior holding that the modified categorical approach may not be used if the crime the defendant was convicted under has a single, indivisible, set of elements, and discussed the difference between 'elements' of an offense and the 'means' by which a defendant can satisfy an element." *Traxler v. United States*, 2016 WL 4536329, at *2 (W.D. Mich. August 31, 2016).
>
> Thus, Petitioner's motion is foreclosed by the statute of limitations because his claim is not based on a right "that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). "Instead, [Petitioner] is raising a claim based on *Mathis*, which did not break any new ground." *Traxler*, 2016 WL 4536329 at *5.

*Crawford*, 2016 WL 5402967 at *2-3.

Other federal courts outside the Sixth Circuit have reached this exact conclusion. *See, In re Lott*, ___ F.3d ___, 2016 WL 5349745 at *1 (5th Cir. Sept. 26, 2016)(" Lott has failed to make a prima facie showing that *Mathis* and *McDonnell* set forth new rules of constitutional law that have been made retroactive to cases on collateral review."); *King v. United States*, ___F.Supp.3d ___, 2016 WL 4487785 at **8 (S.D. Fla Aug. 24, 2016)( "It is well-established that *Descamps*— and by extension *Mathis*—are old rules which apply on direct and collateral review.")(citing, *Mays v United States*, 817 F.3d 728, 734 (11th Cir. 2016));*Leone v. United States*, No. 95-00960-Cr-Lenard, 2016 WL 4479390 at *8 (S.D. Fla Aug.  24, 2016)(same).

Because *Mathis* does not announce a new rule that was nonexistent at the time that Fisher executed the plea agreement, the waiver provisions of paragraph 12 are fully applicable.  Fisher's waiver in this respect was both knowing and voluntary so that neither *McBride* nor *Wall* offer him any sanctuary from the terms of his agreement.  Further, even were we to conclude otherwise – – that Fisher has not knowingly waived his *Mathis* argument – – it is nonetheless time-barred by operation of the 1-year statute of limitation imposed by § 2255(f)(1), which affords a movant one year from the date on which the judgment of conviction becomes final in which to bring his or her 2255 motion to vacate.  28 USC § 2255(f)(1).  Here, the judgment of conviction became final 14 days after its entry on March 30, 2015, or on April 13 of the same year.[14]  Fisher filed his motion to vacate on June 2, 2016, well after the 1-year deadline expired

---

[14]  Rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure provides that a criminal defendant who desires to file an appeal of his conviction has 14 days after the entry of Judgment, or the filing of a notice of appeal by the United States, in which to file his or her own notice of appeal.  At the expiration of this time limit, without a notice of appeal being filed, the judgment becomes final for the purposes of 28 U.S.C. 2255(f)(1). *See, United States v. Taste*, 840 F. Supp. 2d 1039, 1040 (S.D. Ohio 2011) ("Section 2255 motions are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). The limitation period generally runs from the date on which the judgment becomes final.")(citing *Sanchez-Castellano v United States*, 358 F.3d 424, 427 (6th Cir. 2004).

on April 13, 2016. *Crawford*, 2016 WL 5402967 at *2-3(holding *Mathis* argument to be time

barred by operation of § 2255(f)(1)). His arguments based on *Mathis* therefor are time barred as

well as waived.[15]


*Johnson and § 2K2.1*

Upon conviction,  a defendant charged with the unlawful receipt, possession or

transportation of a firearm or ammunition is subject to the sentencing guidelines provisions of

U.S.S.G. § 2K2.1(a), which in subsections (1) through (4) incorporate reference to the convicted

defendant's prior felony conviction or convictions "of either a crime of violence or a controlled

substance offense."  Application Note 1 to the Commentary to § 2K2.1 further explains that the

term "'crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1

of the Commentary to 4B1.2." U.S.S.G. § 2k2,1, Advisory Note 1, Commentary.  Section 4B1.2

of the sentencing guidelines at the time of Fisher's offense and sentencing defined "crime of

violence" as follows:

   **(a)** The term "crime of violence" means any offense under federal or state law, punishable by
   imprisonment for a term exceeding one year, that—

   **(1)** has as an element the use, attempted use, or threatened use of physical force
   against the person of another, or

   **(2)** is burglary of a dwelling, arson, or extortion, involves the use of explosives, or
   **otherwise involves conduct that presents a serious potential risk of physical
   injury to another.**

U.S.S.G. 4B1.2(a)(2)(2014)(emphasis added).[16]

---

[15] Other defendants who have timely raised *Mathis* to challenge the propriety of using the Kentucky burglary
statutes as a predicate offense have been more successful on the merits recently.  For a decision involving a
predicate Kentucky offense of third-degree burglary under KRS § 511.040 that was relied on in violation of *Mathis*
to support an ACCA enhanced sentence, see *United States v. Barnett*, No. 06-cr-71-JHM, 2016 WL 3983318 at *
2(E.D. Ky. July 25, 2016)(holding Kentucky's 3rd degree burglary statute to be no longer qualified as an ACCA
predicate offense where the statue does not categorically qualify as generic burglary).

Fisher now insists that the above highlighted language runs headlong into the holding of

*Johnson v. United States*, ___ U.S.___, 135 S. Ct. 2551, 192 L.Ed.2d (June 26, 2015), which

holds the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) to be void for vagueness and thus a

violation of the Fifth Amendment prohibition against the deprivation of life, liberty or property

without due process of law.  In *Johnson*, the critical language defined a "violent felony" as

follows:

> "any crime punishable by imprisonment for a term exceeding one year ... that—
> "(i) has as an element the use, attempted use, or threatened use of physical force
> against the person of another; or
> "(ii) is burglary, arson, or extortion, involves use of explosives, **or otherwise
> involves conduct that presents a serious potential risk of physical injury to
> another."** § 924(e)(2)(B)

*Johnson*, 135 S.Ct. at 2555-56(emphasis added).

It is this final highlighted language that the United States Supreme Court held in *Johnson*

to be so vague as to fail to give ordinary people fair notice of the conduct that it punishes thereby

inviting arbitrary enforcement in violation of "the first essential of due process."  *Id.* at 2557

(citing *Connally vs. General Constr. Co*., 269 US 385, 391 (1926)).  Two features of the key

language, according to the Court, rendered it unconstitutionally vague: first, the language raised

---

[16] Effective August 1, 2016, the current version of USSG § 4B1.2(a) reads as follows:

(a)   The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a
term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson,
extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. 5845(a) or explosive material as
defined in 18 U.S.C. 841(c).

U.S.S.G. 4B1.2.  Because Fisher was sentenced in March of 2014 we rely on the then applicable version of the same
guideline, which was identical in its language to the version in effect at the time of the commission of the charged
offenses on April 24, 2013. *See United States v Davis*, 397 F.3d 340, 346 (6th Cir. 2005)(addressing the application
of the guidelines).

"grave uncertainty how to estimate the risk posed by crime;" and second, the clause left equal uncertainty "about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558.

Fisher now insists that these same constitutional deficiencies apply with equal force in his case given the identical "residual clause" language found in the version of U.S.S.G. § 4B1.2(a)(2) applied to enhance his sentence via § 2K2.1(a).  The problem with this argument, however, as the government correctly points out, is that the challenged portion of the applicable guideline – – the language identical to the residual clause language of § 924(e)(2)(B)(ii) – – simply was not applied to enhance Fisher's sentence under the "crime of violence" provisions of § 2K2.1(a).  Instead, immediately prior to the highlighted language of § 4B1.2(a)(2) is the enumerated offense of "burglary of a dwelling," the very same predicate offense of KRS 511.030 that served as the basis for the Base Offense Level enhancement imposed on Fisher.  As a result, the *Johnson* decision does not afford Fisher any basis for relief sense Johnson expressly let stand the enumerated offenses of burglary, arson, extortion or an offense involving the use of explosives, identified in § 924(e)(2)(B)(ii).

Several federal courts rely on this exact distinction to reject similar motions for post-conviction relief where defendants have challenged the enhancement of their sentence based on predicate burglary convictions as being violative of *Johnson*.  For example, one very recent decision from the Eastern District of Kentucky is *Sutton vs. Quintana*, 2016 WL 4595213 at *2 (E.D. Ky. Sept.  2, 2016).  The *Sutton* decision involved a federal prisoner, Gary Sutton, who ultimately sought by way of 28 U.S.C. §2241 to challenge his federal sentence following his conviction for three counts of being a felon in possession of multiple firearms and ammunition in violation of 18 U.S.C. § 922(g).

Following Sutton's conviction, the trial court imposed a 280 month sentence of imprisonment based on the career offender enhancement provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.1.  The trial court enhanced Sutton's sentence due to his eight prior state felony convictions in Missouri that included five "violent felonies," one of which was 2nd degree Burglary.  Sutton tried on two separate, earlier occasions to obtain § 2255 relief by challenging his career offender enhancement, the latter time based on *Descamps v. United States*, ___ U.S. ____, 133 S. Ct. 2276 (2013).  After those efforts proved to be unsuccessful, he filed a motion for § 2241 relief in which he argued that following *Johnson* his prior Missouri conviction for second-degree burglary under Mo. Rev. Stat. § 569.170 no longer qualified as a valid predicate offense to support the enhancement of his sentence under the ACCA.  *Id.* at *2.

The District Court in its decision initially determined that Sutton could not obtain relief by way of 28 U.S.C. § 2241 rather than 28 U.S.C. § 2255, but then continued to speak to the merits of Sutton's *Johnson* argument, explaining that:

> [E]ven if the Court could reach the merits of Sutton's claim under *Johnson*, that decision affords no basis for relief. In *Johnson*, the Supreme Court invalidated the residual clause of § 924(e)(2)(B)(ii) as void for vagueness, but in doing so expressly noted that "[t]oday's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2563. Here, Sutton challenges the use of a prior Missouri conviction for Second Degree Burglary to enhance his sentence, but burglary is one of the offenses expressly enumerated as a violent felony under the statute. *Johnson* therefore provides no basis for relief. In re: *Hires*, 2016 WL 3342668, at *2 (11th Cir. 2016) ("Federal prisoners who were sentenced under the elements or enumerated clauses, without regard to the residual clause at all, of course, do not fall within the new substantive rule in *Johnson* and thus do not make a prima facie claim involving this new rule."); *Jordan v. Butler*, No. 6: 15-133-KKC, 2015 WL 5612274, at *4-5 (E.D. Ky. Sept. 23, 2015) (denying § 2241 petition challenging career offender enhancement under *Johnson* based upon prior burglary conviction); *Herbert v. Wehrlich*, No. 16-CV-696-DRH, 2016 WL 4061380, at *3 (S.D. Ill. July 29, 2016) (same).

*Sutton*,  2016 WL 4595213 at *4.

As the above-quoted language from *Sutton* plainly demonstrates, federal defendants who have sought to apply *Johnson* to challenge the use of an enumerated offense, such as a prior burglary conviction, have been uniformly unsuccessful in their efforts.  Accordingly, while *Johnson* may well retroactively apply to the sentencing guidelines in view of *Pawlak* and *In re Patrick*, it does not entitle a federal defendant such as Fisher to relief whose sentence was enhanced based on a prior conviction for burglary, arson, extortion, or an offense that involved the use of explosives – – all of which were enumerated offenses prior to the most recent amendment to USSG § 4B1.2. *See United States v Gintner*, No. 5:13-151-DCR, 2016 WL 347663 at *2 (E.D. Ky. Jan. 28, 2016)(rejecting *Johnson* challenge to predicate Kentucky burglary offenses based on the fact that such offenses fall outside the residual clause struck down in *Johnson,* holding that "because the record demonstrates that the two convictions in question qualified as violent felonies under ACCA clauses that remain intact, Ginter is not actually making a valid *Johnson* claim"); [17] *Waller v. United States*, 4:11-CR-28-HSM-CHS, 2016 WL 4574680 at *3 (E.D. Tenn. Sept. 1, 2016)(same).

*Certificate of Appealability*

The final question is whether Fisher is entitled to a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c).  A state or federal prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA requirements of 28 U.S.C. § 2253(c).  A COA will be issued only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

---

[17] The Court is aware that the *Ginter* analysis of the Kentucky's third-degree burglary statute, KRS 511.040, based on the modified categorical approach pre-*Mathis* is now substantially called into question.  We, however, do not rely on that aspect of *Ginter* as support for the outcome of this recommendation, given that Fisher waived his *Mathis* argument, which is also time-barred in any event.

Such a substantial showing is made when a prisoner establishes that jurists of reason would find it debatable whether the petition or motion states a valid claim of the denial of a constitutional right or, in the cases in which the petition is resolved based upon a procedural ruling, that jurists could find it debatable whether the district court was correct in its procedural ruling. *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy the standard of § 2253(c). *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002). *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)). A state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability. *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Fisher has not met the standard for issuance of a COA. His arguments based on *Johnson* have been repeatedly rejected on their merits as the case law discussed above clearly demonstrates. Fisher simply was not sentenced to 96 months of imprisonment based on the type of residual clause language constitutionally called into question by *Johnson*. Given the recent decisions that rely on this very distinction involving enumerated offenses to distinguish *Johnson* and dismiss highly similar § 2255 motions to vacate, as well as to deny a COA in such cases, jurists of reason simply could not debate that the present petition fails to state a valid claim as to both grounds raised.

## RECOMMENDATION

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate filed by the Defendant be **DENIED** and that he be denied a certificate of appealability as to all of the arguments raised in his motion to vacate.

## <u>NOTICE</u>

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived.  *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2); Fed. R. Civ. P. 72(b)

Copies to Counsel of Record